1
2
3            **UNITED STATES DISTRICT COURT**
4               **DISTRICT OF NEVADA**
5
6  GARY J. BLESKI,                    )      Case No. 2:09-cv-02464-PMP-PAL
                          Plaintiff,  )
7                                     )      **ORDER AND REPORT OF FINDINGS**
   vs.                                )            **AND RECOMMENDATION**
8                                     )
                                      )          (Mtn for Reversal - Dkt. #9)
9  MICHAEL J. ASTRUE,                 )          (Cross Mtn for SJ - Dkt. #11)
   COMMISSIONER OF SOCIAL SECURITY,   )          (Mtn for Oral Arg - Dkt. #14)
10                                    )
11                        Defendant.  )
                                      )
12 ─────────────────────────────────
13        This case involves judicial review of administrative action by the Commissioner of Social

14 Security denying Plaintiff Gary J. Bleski's claim for disability benefits under Title II of the Social

15 Security Act.  Plaintiff's Complaint (Dkt. #1) was filed December 31, 2009.  Defendant's Answer (Dkt.

16 #6) was filed March 16, 2009, as was a certified copy of the Administrative Record (the "A.R.").  *See*

17 Dkt. #7.  This matter has been submitted to the undersigned for Findings and Recommendations on

18 Bleski's Motion for Reversal (Dkt. #9), the Commissioner's Cross-Motion for Summary Judgment (Dkt.

19 #11), and Bleski's Request for Oral Argument (Dkt. #14).

20                              **BACKGROUND**

21 **I.    Procedural History.**

22        On April 12, 2007, Bleski filed an application for Social Security Disability Insurance Benefits

23 alleging he became disabled on June 20, 2006.  (A.R. 111).  His claim was denied by the Social Security

24 Administration (the "SSA"), and Bleski timely filed a request for a reconsideration hearing before an

25 Administrative Law Judge ("ALJ") .  The hearing before the Honorable Sally C. Reason, the ALJ, was

26 held on May 11, 2009.  (A.R. 41-70).  The ALJ issued her decision on July 9, 2009, finding Bleski met

27 the non-disability requirements of Section 216(i) of the Social Security Act and was insured for

28 disability benefits through December 31, 2011, but was not disabled within the meaning of the Act.

1    (A.R. 10-21).   Bleski requested review of the ALJ's decision by the Appeals Council, but the Appeals

2    Council denied review of the ALJ's decision on October 30, 2009, making the ALJ's decision the final

3    decision of the Commissioner of Social Security (the "Commissioner").  (A.R. 2-4).

4            On December 31, 2009, Bleski filed a Complaint (Dkt. #1) in this court, appealing the decision

5    of the Commissioner.  The Commissioner filed an Answer (Dkt. #6) to Plaintiff's Complaint on March

6    16, 2010.  The court entered a Scheduling Order (Dkt. #8) on April 14, 2010.  Bleski filed a Motion for

7    Reversal (Dkt. #9) on May 14, 2010, to which the Commissioner responded by filing an Opposition and

8    Cross-Motion for Summary Judgment (Dkt. ##10, 11) on June 14, 2010.  Bleski filed a Combined Reply

9    and Opposition (Dkt. #12) on June 29, 2010.   The Commissioner replied (Dkt. #13) on July 12, 2010.

10   On July 16, 2010, Bleski filed a Request for Oral Argument (Dkt. #14) to which the Commissioner

11   responded (Dkt. #15) on July 19, 2010.  The Court has considered the Motion to Remand, the Cross-

12   Motion for Summary Judgment, the various Responses and Replies, and the Request for Oral Argument.

13   **II.    Factual Background.**

14           **A.    Plaintiff's Medical Reports**

15           Bleski alleges that he is completely and permanently disabled because he suffers from bilateral

16   carpal tunnel;  pain in his neck, back, legs, knees, feet, and hands; irritable bowel syndrome; jaw pain;

17   depression; and headaches.  (A.R. 43, 76).  Bleski's medical history is voluminous, and the summary

18   below reflects the records considered by the ALJ and those relevant to the issues presented in this

19   appeal. Bleski is a fifty-five year old man who was employed by the Walt Disney Company between

20   November 26, 1990, and June 20, 2006, as a mail room employee.  (A.R. 43, 213).  A review of Bleski's

21   medical records reflects that he has experienced pain in his neck since at least November 1990, when he

22   reported suffering pain in his neck with radiation of pain, numbness, and tingling down both arms to his

23   hands while sorting and delivering mail for the Walt Disney Company.  (A.R. 486).

24           His medical records reflect that he has had pain in his knees since at least 1994 after a slip and

25   fall on a wet and oily surface on February 18, 1994.  (A.R. 480).  Between 1994 and 1997, Bleski's job

26   duties changed after he was promoted to an encoder and then lead encoder, which required sitting for

27   four to five hours per day while operating the encoding machine and standing for about three hours per

28   day while sorting mail.  (A.R. 319).  While working as a lead encoder, Bleski reported that the lack of

supervision he received caused him stress and anxiety, and he developed temporomandibular joint disorder [TMJ] and began experiencing headaches. (A.R. 320). In 2008, Dr. Mayer Schames, D.D.S. undertook a complete dental work up of Plaintiff based upon Plaintiff's complaints of jaw pain and headaches. (*See generally* A.R. at Exh. 16F). Dr. Schames diagnosed Bleski with myofascial pain of the facial musculature where palpation of the musculature evoked subjective tenderness. (A.R. 684). Dr. Schames also noted objective palpable trigger points and taut bands within the musculature. (A.R. 684). An EMG revealed elevated muscular activity with incoordination and aberrant function of the facial musculature. (A.R. 684). Plaintiff appeared to suffer from bruxism [clenching and grinding of the teeth and bracing of the facial musculature]. (A.R. 684). Bleski took time off work for his conditions, using his sick time, and his employer was aware of his neck symptoms. (A.R. 320).

Bleski's job duties changed again in 1997, and he returned to sorting and delivering mail, which required him to stand for eight hours per day, increasing his neck and radiating pain. (A.R. 320). He continued working, taking time off as required, and self-treating with land and pool exercises, application of hot and cold packs, and various over-the counter medications. (A.R. 320). Beginning in 1998, Bleski began treating with a chiropractor, Mike Weaver, D.C., once per week. (A.R. 320; 480-86).

Around 2000, Bleski began developing difficulty sleeping and anxiety he attributed to stress from his supervisor, Cathy Doub, who Bleski believed was harassing him due to his union activities. (A.R. 320). Around the same time Bleski also began experiencing pain, numbness, tingling, and a cold sensation in his feet and toes, especially while sleeping. (A.R. 320). In 2002, Dr. Melvin A. Belafsky, diagnosed Bleski's foot pain as sensory peripheral neuropathy probably secondary to chronic alcohol use. (A.R. 241). Dr. Greenspan later diagnosed Bleski with plantar fasciitis and a painful bunion on his right foot in 2004. (A.R. 493). In 2006 and 2008, Bleski's lower extremity condition was again noted by Drs. Edward O'Neill and Robert L. Samson, both orthopedists. (A.R. 427, 836).

Bleski' s knee injury was aggravated in 2001 when he again slipped and fell. The 2001 injury was treated with physical therapy. (A.R. 720). Subsequently, he re-injured his knee at a Disney Company work retreat. *Id.* Bleski re-injured his knee while riding a bike to deliver mail at work in November or December 2004. (A.R. 721).

1    On December 19, 2003, while at work, Bleski sustained injuries to his neck, upper middle and

2    lower back, shoulders, upper and lower extremities, both feet, and stomach.  (A.R. 498).  He also

3    suffered headaches and pain in both hands as a result of this injury.  *Id.*  After his December 2003 injury,

4    Bleski was seen by Dr. Ivan Greenspan, Psy.D. for depression related to work stress and harassment by

5    his supervisor in May 2004.  Dr. Greenspan's report diagnosed Bleski with major depressive disorder

6    and noted that he suffered from severe pain and physical limitation.  (A.R. 499, 502).

7    On November 16, 2004, Dr. Stacey Bricklin, Psy.D., examined Bleski and opined that he

8    suffered a moderate impairment in his ability to perform simple and repetitive tasks, maintain a work

9    pace appropriate to a given work load, a slight to moderate impairment in his ability to perform complex

10   and varied tasks, a slight impairment in the ability to comprehend and follow instructions, and a minimal

11   impairment to relate to others, influence people, make generalizations and evaluations or decisions

12   without supervision, and carry out responsibilities, planning, directions, and control. (A.R. 830). In

13   October 2006, Robert Fauget, M.D., Ph.D., performed a psychiatric evaluation of Bleski in connection

14   with a workers' compensation claim.  Bleski reported significant stress due to his physical problems and

15   to harassment by his supervisor.  (A.R. 445-46).  Dr. Fauget concluded that Bleski suffered from

16   depressive disorder, not otherwise specified.  (A.R. 452).  Bleski underwent another psychological

17   evaluation by Edward Ritvo, M.D. in July 2007 because he had been feeling depressed.  (A.R. 617).  Dr.

18   Ritvo diagnosed Bleski with mood disorder secondary to physical illness.  (A.R. 620-621).  Dr. Ritvo

19   also concluded that Bleski had no mental functional limitations.  (A.R. 620-621). In August 2007, State

20   Agency psychiatrist Melvin Morgan, M.D. examined Bleski and opined that Bleski's depression was

21   non-severe and resulted in only a mild limitation in maintaining concentration, persistence, and pace.

22   (A.R. 649, 657, 659).

23   Bleski has suffered from symptoms related to carpal tunnel syndrome, including bilateral pain,

24   numbness and tingling of hands and wrist, loss of grip strength, and frequent awakening at night because

25   of these symptoms since at least March 2004.  (A.R. 490).   As a result of his various physical ailments,

26   Bleski was taken off work several times throughout his employment with the Walt Disney Company.

27   Plaintiff was taken off work by his treating physician, Dr. Greenspan, between January 2004 and July

28   2004 because of his multiple orthopedic complaints involving his neck, entire back, bilateral hands and

feet. (A.R. 740). After he underwent arthroscopic knee surgery in 2005, Dr. Conwiser, Bleski's treating physician/surgeon, removed him from work between August 2005 and February 2006. *Id.* He was also placed on leave by Dr. Greenspan in November 2004 and May 2005 for similar reasons. *Id.* In June 2006, Bleski was taken off work by his orthopedist, Dr. Carlo Orlando due to his left knee problems. *Id.* Dr. Orlando released Bleski to return to work in December 2006, but Bleski claims he was not accepted back at work by his employer. (A.R. 725).

Bleski was diagnosed with cervical spondylosis between C3 and C7, with neural foraminal stenosis and severe degeneration at C4-5, C5-6, and C6-7. (A.R. 13, 468, 470, 491, 744). In July 2005, Plaintiff's treating orthopedic surgeon, Mark Greenspan, M.D., found Mr. Bleski suffered from decreased range of motion in his shoulders, right wrist, and right elbow. Bleski also had decreased grip strength bilaterally, as well as tenderness and spasm in his lumbar spine and tenderness in the feet and ankles. (A.R. 253-54). Dr. Greenspan concluded that Bleski was precluded from heavy work, work at or above the shoulder level, repetitive pushing, pulling, twisting, and turning with the elbows or shoulders, repetitive manipulation and forceful strength activities involving the wrist, and prolonged weight -bearing activities. (A.R. 254). Dr. Greenspan reviewed Bleski's medical records in September 2008 and maintained his July 2005 opinion.

In July 2006, examining orthopedist Jon Greenfield, M.S., opined that Plaintiff was restricted from: (a) heavy work because of his limited capacity for repetitive motion of the cervical spine, (b) working above shoulder height; (c) looking up or down for prolonged periods of time; and (d) gripping, lifting, pushing, pulling, holding, and torquing. (A.R. 471).

Bleski has also been diagnosed with left knee arthritis and mild patellofemoral chondromalacia [abnormal softening or degeneration of the cartilage of the joints, especially the patella of the knee], a tiny joint effusion and popliteal cyst of the left knee. (A.R. 14, 743). As noted by the ALJ, there is a suggestion of a left knee arthroscopy and chrondoplasty performed by Dr. Philip Conwiser in September 2005, but there is no surgical report in the A.R. (A.R. 14, 386, 726, 740; *see generally* Exh. 3F in A.R. (indicating Bleski underwent physical therapy and went for periodic post-operative checkups with Dr. Conwiser, had sutures removed, etc). Bleski does not believe he benefitted from this surgery. (A.R. 726).

1    In April 2007, Dr. Carl Orlando performed a second knee surgery on Bleski–a mosaicplasty in

2    which five cartilage grafts were implanted in the distal femur of Bleski's left knee.  (A.R. 557-59, 726).

3    One month later, Bleski appeared to be recovering well–he reported his pain had "gone down

4    extensively," and he had greater range of motion.  (A.R. 667).  In June 2007, Dr. Orlando concluded

5    Bleski could return to work if he could alternate between sitting and standing and did not kneel, squat,

6    pivot, or twist.  (A.R. 665).  In September 2007, Dr. Orlando noted that Bleski was doing "fairly well,"

7    was asymptomatic when walking on flat surfaces or sitting with the leg extended; however, he

8    experienced pain from prolonged kneeling, bending the knee, or walking uphill or on stairs.  (A.R. 662).

9    After the initial three months of recovery, however, Bleski noted gradual recurrence of his knee

10   symptoms.  (A.R. 726).

11   Bleski suffers from arthritis of the lumbar and thoracic spine.  (A.R. 13).  An x-ray taken on July

12   13, 2006, revealed mild degenerative changes of the upper lumbar and lower thoracic area, possible

13   wedging of the vertebrae at T11-12, normal alignment, and facet joint degeneration.  (A.R. 13, 468).  At

14   that time, Dr. Greenfield examined Bleski and noted tenderness in Bleski's lower back and in the

15   paravertebral muscles bilaterally.  (A.R. 468).  Further, an x-ray performed on July 23, 2007, revealed

16   spondylosis at L3-S1 and disc degeneration at L1-L2, L4-L5, and L5-S1.  (A.R. 630).

17   However, in July 2007, Dr. James Paule examined Bleski and found that his range of motion in

18   his shoulders, elbows, wrists, hips, and ankles was grossly normal.  (A.R. 627-28).  He found that Bleski

19   could make a fist, his hands could be fully extended and thumbs opposed, and his finger approximation

20   was intact.  (A.R. 627).  Bleski had no limitation of motion in his neck, but flexion produced pain.  (A.R.

21   626).  Bleski did not have lumbar tenderness, spasm in his back, and he was able to raise his legs while

22   straight.  (A.R. 627).  Dr. Paule found that Bleski had "extremely vague symptoms concerning the left

23   knee" and diminished pedal pulses bilaterally.  (A.R. 624, 628).  Dr. Paule concluded that Bleski could:

24   (a) lift or carry fifty pounds occasionally and twenty-five pounds frequently; (b) stand or walk for up to

25   four hours in an eight-hour workday; (c) sit for six hours of an eight hour workday; (d) climb, stoop,

26   kneel, and crouch occasionally; (e) perform fine manipulations occasionally; and (e) should avoid

27   machinery and heights.  (A.R. 629).  In August 2007, medical consultant Myung Sohn, M.D. concluded

28   that Bleski could: lift and carry twenty pounds occasionally and ten pounds frequently; sit, stand, and/or

1    walk six hours in an eight hour workday; climb, balance, stoop, kneel, crouch, and/or crawl occasionally;

2    and perform fine manipulations frequently.  (A.R, 644-648).

3           Dr. Edward O'Neill, one of Bleski's treating physicians,  also diagnosed Plaintiff with irritable

4    bowel syndrome in October 2006.  (A.R.  740).  Dr. O'Neill notes in the report of his Agreed Medical

5    Examination of Bleski that "the medical records seem to indicate that he was having his gastrointestinal

6    problems at a time when he was . . . not working."  (A.R. 429).  The ALJ also considered Bleski's heart

7    condition, hypertension, sleep apnea, and obesity, although Plaintiff did not allege that any of these

8    ailments limited his ability to work.

9           Bleski was also examined periodically between 1995 and 2009 by his treating physician, Richard

10   Kroop, M.D.  (A.R. 910-930).  In April 2009, Dr. Kroop diagnosed Bleski with carpal tunnel, sleep

11   apnea, irritable bowel syndrome, and pain in his back, arms, hands, knees, and feet.  (A.R. 911).  He

12   noted that Bleski had reduced range of motion in his neck, shoulders, back, arms, hands, and ankles.

13   (A.R. 912).  Dr. Kroop also noted swelling, muscle spasm, reflex changes, crepitus, muscle weakness,

14   gastritis, impaired sleep, abnormal gait, sensory loss, tenderness, and muscle atrophy.  (A.R.  912).  He

15   concluded that Bleski: was limited to sitting for thirty minutes and standing for fifteen minutes at a time;

16   could sit, stand, and/or walk for less than two hours in an eight hour workday; could occasionally lift less

17   than ten pounds; could grasp, turn, and twist objects with his hands for twenty-five percent of an eight-

18   hour day; and could perform fine manipulations with his fingers and reach with his arms for ten percent

19   of an eight-hour workday.  (A.R. 914-16).  Dr. Kroop also opined that Bleski suffered from extreme

20   anxiety and depression that limited his ability to deal with work-related stress.  (A.R. 913, 917).

21          **B.      Testimony at the Administrative Hearing.**

22          On May 11, 2009, Bleski testified that he was terminated from his employment with the Walt

23   Disney Company in June 2006 due to pain and work restrictions.  (A.R. 44).  He did not attempt to find

24   another job because he was receiving workers' compensation and was continuing with his physical

25   treatments.  (A.R. 45).  At that time, he could not sit or stand or walk for prolonged periods, and he was

26   also prohibited from squatting, kneeling, stooping, or bending.  (A.R. 44).  At the time of the hearing, he

27   could not sit for prolonged periods because of pain in his left knee, neck and back.  (A.R. 47).  He could

28   sit in place for only approximately twenty minutes before he had to get up and move around or shift

1   dramatically in his chair.  (A.R. 56).  Plaintiff could only stand in one place for approximately fifteen

2   minutes because he experienced spasm in his lower back and pain in his neck, feet, and left knee.  (A.R.

3   50).  As a result, Plaintiff had to constantly switch between a seated and a standing position.  (A.R. 57).

4   Bleski was also unable to carry objects that weigh more than ten pounds, and he had difficulty grasping

5   them and manipulating them in his hands because of pain.  (A.R. 45-46, 48).   He testified he could not

6   hold objects–such as a pen–for longer than ten minutes without having to rest his hands for

7   approximately five minutes before continuing.  (A.R. 51).

8        Plaintiff indicated he also had difficulty lifting lighter objects, and he had managed his daily

9   living because he lived with friends or relatives over the last year.  (A.R. 49).  If he tried to carry heavier

10  objects, he experienced pain in his neck and back, and he dropped the objects.  (A.R. 48).  He had

11  difficulty bathing because he experienced pain when stretching to wash his hair or brushing his teeth due

12  to a pinched nerve in his neck.  (A.R. 48).  During bathing, Plaintiff experienced pain his neck,

13  shoulders, hands, feet, and left knee.  (A.R. 50).  Plaintiff stated that between the time of his disability

14  onset and the administrative hearing, his physical condition had deteriorated, he experienced more pain,

15  and his muscles had atrophied.  (A.R. 47).  At the time of the administrative hearing, Plaintiff was taking

16  Vicodin, Flexeril, Celebrex, Tramadol, and Tylenol.

17       Bleski testified that he had two surgeries on his knee and that the second one was unsuccessful.

18  (A.R. 52).  Although workers' compensation had approved double carpal tunnel surgery for Bleski, he

19  was hesitant to undergo it because his knee surgery was unsuccessful, and he needed his hands and

20  elbows to steady himself on his cane to support his knee.  (A.R. 52-53).  Plaintiff was also treated for

21  depression by several doctors but has had to discontinue that treatment because it is not covered by his

22  workers' compensation insurance.  (A.R. 54).  Plaintiff was also treated at Universal Psychiatric Clinic

23  in Los Angeles three years prior to the administrative hearing.  (A.R. 56).

24       Bleski testified that in his previous job working as an encoder, he was required to sit and stand

25  and lift objects that weighed up to ten pounds.  (A.R. 58, 59).  He also operated a machine using a

26  keyboard to sort mail.  (A.R. 60).  In his other position working in the mail center, he was required to

27  deliver mail, either on foot or by bicycle and to lift objects that weighed up to thirty-five pounds. (A.R.

28  58, 59).  Based upon Bleski's description of his previous work, the ALJ asked the vocational expert to

consider the following hypothetical: considering an individual that is Bleski's age, education, past work

history, capable of light work, only occasional work at or above shoulder height, no forceful grip, grasp,

turn, torque bilaterally with his upper extremities, can only frequently do fine manipulation activities,

avoid hazards, avoid prolonged standing, walking, and weight bearing activities such that he was limited

to standing or walking four hours per day, would he be precluded from engaging in Bleski's past work?

(A.R. 61).  The vocational expert concluded that would preclude Plaintiff's past work, and there would

be no transferable skills.  (A.R. 61-62).  If however, the hypothetical individual could stand or walk in

two hour increments up to six hours per day, then he could perform both of Plaintiff's past jobs as Bleski

performed them.  (A.R. 63).  When Bleski's attorney amended the ALJ's hypothetical to include a

person who could only sit or stand for fifteen to twenty minutes at a time over the course of eight hours,

the vocational expert testified the person would not have the residual functional capacity to do Plaintiff's

past work.  (A.R. 68).  He further stated that if someone needed to change positions that frequently, it

would interrupt his work to the extent that he would not be considered productive.  (A.R 69-70).

**DISCUSSION**

I.     **Request for Oral Argument**

Bleski requested oral argument to concerning a statement in his Motion for Reversal that M.

Sohn is not a licensed physician, which the government claims is erroneous.  Bleski asserts that he made

every attempt to verify all matters represented as facts to the court, but neither he nor the Commissioner

have been able to verify whether M. Sohn is a doctor.  The Motion details the reasons counsel for Bleski

concluded Sohn was not a licensed physician.  Bleski maintains the Commissioner's Reply clarification

has no bearing on his argument that "substantial evidence does not accommodate the rejection of one

check-the-box form in favor of another."  Because of the difficulty of conclusively determining whether

the RFC form was filled out by Sohn or another physician, Bleski fears the "likelihood of denial by

typographic error."   Local Rule 78-2 provides, "All motions may, in the court's discretion, be

considered and decided with or without a hearing."  *See also, Bally Gaming, Inc. v. IGT,* 623 F.Supp.2d

1213, 1215 (D. Nev. 2008).  The parties' positions were well briefed and the court will decide the matter

based upon the parties' papers and the Administrative Record.

## II.   Judicial Review of Disability Determination

Bleski seeks judicial review of the Commissioner's decision determining that he was not eligible to receive disability insurance benefits.  Bleski timely requested review by the Appeals Council which declined his request for review on October 30, 2009.  When the Appeals Council denies a request for review of an ALJ's decision, the decision of the ALJ represents the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.  Bleski then filed this action seeking judicial review of the Commissioner's decision.  *See* 20 CFR § 404.901(a)(5); 42 U.S.C. § 405(g).  This matter was referred to the undersigned for a report of findings and recommendations pursuant to the provisions of 28 U.S.C. §§ 636 (b)(1)(B) and (C).

District courts review administrative decisions in social security benefits cases under 42  U.S.C. § 405(g).  *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).  The statute provides, in relevant part, that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides."  42  U.S.C. § 405(g).

42 U.S.C. § 405 (g) provides that the District Court may enter, "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  The Ninth Circuit reviews a decision of a District Court affirming, modifying or reversing a decision of the commissioner *de novo*.  *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2003).

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  The Commissioner's findings may be set aside if they are based on legal error or are not supported by substantial evidence.  *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Lewis v. Apfel*, 236 F.3d 503 (9th Cir. 2001).  In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and

the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen*, 80 F.3d at 1279 (holding that courts must weigh both the evidence that supports and the evidence that detracts from the Commissioner's conclusion). Under the substantial evidence test, the Commissioner's findings must be upheld if supported by inferences reasonably drawn from the record. *Batson,* 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *Id.* If the evidence can reasonably support either affirming or reversing the ALJ's decision, the court may not substitute its judgment for the ALJ's judgment. *Flaten v. Sec'y of Health and Human Serv.,* 44 F.3d 1453, 1457 (9th Cir. 1995).

It is incumbent on the ALJ to make specific findings so that the court need not speculate as to the findings. *Lewin*, 654 F.2d at 635 (*citing Baerga v. Richardson*, 500 F.2d 309 (3d Cir. 1974)). In order to enable the court to properly determine whether the Commissioner's decision is supported by substantial evidence under 42 U.S.C. § 405(g), the ALJ's findings "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Lewin*, 654 F.2d at 635.

## II.   Disability Evaluation Process

To qualify for disability benefits under the Social Security Act, a claimant must show that:

(a)   he suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less that twelve months; and

(b)   the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see also* 42 U.S.C. § 423(d)(2)(A). The claimant has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42

1   U.S.C. § 423(d)(1)(A).  If a claimant establishes an inability to perform his prior work, the burden shifts

2   to the Commissioner to show that the claimant can perform other substantial gainful work that exists in

3   the national economy.  *Batson*, 157 F.3d at 721.

4        A plaintiff seeking Social Security disability benefits is also required to prove that he became

5   disabled on or before his date last insured ("DLI").  *Flaten*, 44 F.3d at 1458-1459; *see also* 20 C.F.R. §

6   404.1520; *Morgan v. Sullivan,* 945 F.2d 1079, 1080 (9th Cir. 1991) (*per curiam*).  To qualify for social

7   security disability benefits, a claimant must be fully insured and have at least twenty quarters of coverage

8   in the forty-quarter period which ends in with the quarter in which the disability occurred.  *See* 42 U.S.C.

9   §§ 416(i)(3), 423(c)(1); 20 C.F.R. § 404.130(b).  "[T]estimony from family, friends, and neighbors are

10   all relevant to the determination of a continuously existing disability with onset prior to expiration of

11   insured status."  *Flaten*, 44 F.3d at 1461 n.5 (*citing Hartman v. Bowen*, 636 F. Supp. 129 (N.D. Cal.

12   1986)).  The requirement that an individual seeking benefits be insured at the time the individual suffers

13   the disability is intended to "encourage individuals who have previously suffered from a disability to

14   return to substantial gainful employment when their medical condition improves sufficiently to allow

15   them to do so."  *Flaten*, 44 F.3d at 1459 (*citing* S. Rep. No. 1856, 86th Cong., 2d Sess. (1960), *reprinted*

16   *in* 1960 U.S.C.C.A.N. 3608, 3623-3625).   The ALJ found, and it is undisputed, that Bleski meets the

17   non-disability requirements of Section 216(i) of the Social Security Act and was insured for disability

18   benefits through December 31, 2011.

19        **A.**    **Five-Step Sequential Evaluation Process**

20        20 C.F.R. § 416.920 establishes a five-step sequential evaluation process to be followed by the

21   ALJ in a disability case.  *Mendoza v. Apfel*, 88 F. Supp. 2d 1108, 1111 (C.D. Cal. 2000).  The first step

22   requires the ALJ to determine whether the claimant is currently engaged in substantial gainful activity.

23   20 C.F.R. 416.920(b).  If the claimant is currently engaged in substantial gainful activity, a finding of

24   non-disabled is made, and the claim is denied.  The second step requires the ALJ to determine whether

25   the claimant has a severe impairment or combination of impairments that significantly limit him or her

26   from performing basic work activities.  20 C.F.R. § 416.920(c)).  If the ALJ determines that the claimant

27   has no such impairment, a finding of non-disabled is made, and the claim is denied.  The third step

28   requires the ALJ to compare the claimant's impairment(s) with those impairments in the Listing of

1    Impairments ("Listing") located at 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. § 416.920(d).

2    If the impairment(s) meets or equals an impairment in the Listing, disability is conclusively presumed,

3    and benefits are awarded.

4           If the impairment(s) does not meet or equal an impairment in the Listing, step four requires the

5    ALJ to determine whether the claimant has sufficient residual function capacity ("RFC") despite his

6    impairment(s), to perform his past work.  *See* 20 C.F.R. § 416.920(e).  RFC assessment is a function-by-

7    function assessment based upon all of the relevant evidence of an individual's ability to do work-related

8    activities.  Social Security Administration, *Titles II and XVI: Assessing Residual Functional Capacity in*

9    *Initial Claims*, SSR 96-8p, 1996 SSR LEXIS 5, *8.  If the claimant is still capable of performing his past

10   work, a finding of non-disabled is made, and the claim is denied.  The claimant has the burden of

11   proving that he cannot perform his past work.  *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).  If

12   the claimant cannot perform his past work, a *prima facie* case of disability is established, and step five

13   shifts the burden to the Commissioner to prove that the claimant, based on his age, education, work

14   experience, and RFC, can perform other substantial gainful work that exists in significant numbers in the

15   national economy.  20 C.F.R. § 416.920(f).  If the ALJ finds that any one of the five steps establishes

16   that the claimant is not disabled, no further evaluation is required.  *See* 20 C.F.R. § 404.1520(a).

17          **B.    Standard of Review**

18          When deciding a Social Security appeal, the decision of the Commissioner must be affirmed if it

19   is supported by substantial evidence, and the Commissioner applied the correct legal standards. *Batson v.*

20   *Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) (citation omitted).  Substantial

21   evidence is relevant evidence which a reasonable person might accept as adequate to support a

22   conclusion when the entire record is considered.  *Id.* (citation omitted).   It "is more than a mere scintilla,

23   but less than a preponderance." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003)

24   (citation omitted).  The Commissioner's "resolution of any conflicts in the evidence, if reasonable, must

25   be affirmed.  *See, e.g., Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) ("[W]e must uphold the

26   [Commissioner's] decision where the evidence is susceptible to more than one rational interpretation");

27   *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) ("We must uphold the ALJ's decision where  the

28   evidence is susceptible to more than one rational interpretation").   Where the evidence can reasonably

support either affirming or reversing the Commissioner's conclusion, the court may not substitute its own judgment for that of the Commissioner. *Batson*, 359 F.3d at 1196 (citation omitted).   Thus, the question before the court is not whether the Commissioner reasonably could have reached a different outcome, but whether the Commissioner's final decision is supported by substantial evidence.   *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).    It is unequivocally the claimant's burden to demonstrate that he has a disabling mental or physical condition by providing "specific medical evidence" in support of the claim. 20 C.F.R. § 404.1514; *see Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (citing *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) ("The claimant bears the burden of proving she is disabled.")). Additionally, in disability insurance benefit cases, the claimant must prove the existence of a disabling impairment while he is still insured. 42 U.S.C. § 423(c).

## C.    The Parties' Positions

### 1.    Plaintiff's Motion for Reversal

Bleski asserts that the ALJ only evaluated evidence that supported a denial, and this evidence is insufficient to support the decision.  Plaintiff maintains the ALJ did not consider the totality of reports and medical records before her, but instead, only cited the portions of the record which support her decision.  Further, Bleski contends the ALJ's finding that he could return to his past relevant work is contradicted by the testimony of the vocational expert.  Bleski also asserts the administrative decision does not properly weigh the medical opinions of the examining and treating physicians.  Specifically, the decision gives no weight to Plaintiff's treating physician, Dr. Kroop.  Plaintiff asserts Dr. Kroop's opinions should be accorded controlling weight because they are well-supported by medically accepted clinical and laboratory diagnostic techniques.  Although they are inconsistent with other doctors' conclusions, Bleski asserts that the ALJ should not have rejected his opinion without providing specific and legitimate reasons which are supported by substantial evidence in the record.

Bleski also argues the decision does not contain a proper credibility analysis because the ALJ did not provide specific and cogent reasons for rejecting his subjective complaints.  He asserts that the ALJ's rationales for rejecting his testimony are not convincing and were not made upon permissible grounds. Specifically, Bleski's argues that his failure to undergo surgery for carpal tunnel was explained, and the ALJ did not consider his explanation.  Further, Bleski testified that he could only sit for twenty minutes,

and the ALJ observed him seated during the hearing for forty-five minutes.  Bleski asserts that an ALJ's observations of a claimant during a hearing do not constitute substantial evidence to support a negative credibility finding, and that the ALJ should have considered all available evidence because pain is subjective and not able to be measured by reliable techniques.

Bleski contends that the ALJ erred in concluding he had the residual functional capacity to perform the exertional demands of light work.  The ALJ concluded that Bleski could "lift and/or carry up to twenty pounds occasionally, lift and/or carry ten pounds frequently, stand and/or walk for about four hours in an eight-hour workday, and sit for about six hours in an eight-hour workday." (A.R. 19).  In making this finding, Bleski argues the ALJ improperly disregarded the opinions of every treating physician who opined regarding Bleski's RFC for work.

Further, the decision does not contain a function-by-function analysis of the Plaintiff's past work at step four.  Bleski argues the ALJ did not consider his limitations, and the analysis does not include any reason for excluding them.  As a result, the vocational expert's testimony that Bleski could perform light work cannot be considered.  Bleski also contends the vocational expert's testimony is not substantial evidence that Bleski could return to his previous work because the ALJ did not fully consider Bleski's medical limitations in forming her hypothetical inquiry to the vocational expert.  Specifically, the ALJ did not include Bleski's need to take frequent breaks for rest, pain medication, and his need to shift position because of pain.  As a result, Bleski should be found disabled because a claimant having an RFC of a less than full range of light work is considered disabled within the meaning of the Social Security Act.

### 2.    Commissioner's Cross-Motion for Summary Judgment and Opposition.

The Commissioner contends the ALJ considered and rejected Dr. Kroop's opinion, gave valid reasons for rejecting Dr. Kroop's opinion, and gave greater weight to the opinions of other doctors that were more consistent with the medical evidence.  First, the ALJ found that Dr. Kroop's progress notes were cursory, did not reflect the symptoms indicated in his diagnoses, and he did not provide the clinical signs and diagnostic techniques used to reach his diagnoses.  Second, Dr. Kroop's opinion is inconsistent with other medical evidence, and the ALJ gave more weight to medical opinions that were well-supported by accepted clinical and laboratory diagnostic techniques and that were consistent with

1   Bleski's medical records as a whole.  The ALJ gave significant weight to Dr. Greenspan's and Dr.

2   Greenfield's opinions.  Both were also Plaintiff's treating physicians.  The ALJ also considered the

3   opinions of Drs. Paule and Sohn, but she found that the evidence, taken as a whole, did not support

4   certain portions of these physicians' opinions.  Namely, the ALJ rejected Dr. Paule's opinion that Bleski

5   could lift and carry fifty pounds occasionally and also rejected Dr. Sohn's opinion that Plaintiff could

6   stand and walk for six hours in an eight-hour workday, instead finding Plaintiff was limited to standing

7   and walking for a total of four hours in an eight-hour workday.

8          Additionally, the ALJ gave specific and convincing reasons for discrediting Bleski's testimony.

9   The ALJ noted that Bleski's pain and limitation concerning his carpal tunnel was inconsistent with the

10  fact that he elected not to undergo doctor-recommended surgery.  She also found that the medical

11  records were inconsistent with Plaintiff's subjective complaints, and therefore, she discounted Plaintiff's

12  complaints of more serious symptoms.  The ALJ also properly considered her own observations of

13  Bleski at the hearing in making an overall credibility determination.  The Commissioner asserts that

14  even if the evidence is susceptible to more than one rational interpretation, the ALJ's rational finding

15  should be upheld.

16         The Commissioner maintains that the ALJ properly concluded Bleski did not have a severe

17  mental impairment because he had no more than a mild limitation in activities of daily living, social

18  functioning, and ability to maintain concentration, persistence, or pace, and he had not experienced

19  episodes of decompensation.  The ALJ relied upon evaluations conducted by Drs. Faguet, Ritvo, and

20  Morgan.  In light of the medical evidence, the ALJ properly gave little weight to Dr. Kroop's

21  controverted opinion that Plaintiff suffered from extreme anxiety and depression that resulted in a

22  marked limitation to deal with work stress.  The ALJ noted Dr. Kroop's medical records did not include

23  mental status evaluations or referrals to mental health professionals, and his reports did not refer to any

24  objective medical findings regarding Plaintiff's alleged mental limitations.  Because the ALJ found

25  Bleski's mental limitation to be non-severe and unsupported by the record, she was not required to

26  consider it in her RFC assessment.

27         Moreover, the ALJ properly assessed Bleski's limitations based upon the medical evidence as a

28  whole.  Although she discussed each alleged impairment separately at step two of the analysis, she

considered the functional effect of all of Plaintiff's impairments, severe and non-severe, in her RFC analysis. The ALJ's RFC finding limited Plaintiff to light work with numerous additional limitations, and Plaintiff has not shown his non-severe impairments would limit him further. The ALJ also properly found that Plaintiff could perform his past relevant work as an addressing machine operator, and a function-by-function analysis was unnecessary because the ALJ relied on Bleski's own testimony that he performed that job seated and did not have to lift more than ten or twenty pounds. The ALJ also relied the vocational expert's testimony that a person with Plaintiff's age, education, work experience, and RFC could perform Plaintiff's past work as an addressing machine operator, as Plaintiff actually performed it. The ALJ was not required to accept the limitations presented in the hypothetical posed by Plaintiff's counsel, only those limitations supported by the record. The ALJ was not required to apply Rule 201.14 of the Medical-Vocational Guidelines because that rule only applies to those individuals limited to sedentary work.

**3.      Plaintiff's Combined Reply and Opposition.**

Bleski asserts the Commissioner's RFC determination did not accurately represent Bleski's capacity for work activity. First, the ALJ improperly determined that Bleski had the capacity to use his hands frequently, and Bleski's carpal tunnel prevents him from doing so. This fact is critical because Plaintiff's past work required frequent use of his hands. Second, the ALJ raised Bleski's RFC and changed the job demands of his previous work to deny Bleski's claim. Specifically, the ALJ's finding that Bleski could frequently perform fine manipulations is inconsistent with Dr. Greenfield's opinion that Bleski is precluded from repetitive manipulations.

Plaintiff also asserts Dr. Sohn is not a doctor, but rather, a medical consultant. Dr. Kroop, on the other hand, graduated from medical school and completed medical residency. Furthermore, Plaintiff suffers from irritable bowl syndrome, and there are repeated findings throughout the record to support this conclusion. Additionally, the ALJ failed to consider the cumulative effect of all Bleski's impairments on his ability to work. Most notably, the ALJ erred in labeling Bleski's mental impairments as non-severe, given the medical opinions of Dr. Kroop and Stacy Briklin, Psy.D.    The ALJ also had no clear and convincing reason to discredit Plaintiff's testimony based upon his decision not to pursue carpal tunnel surgery.

Bleski reiterates that the ALJ erred by using her own observations of him during the hearing to support a negative credibility finding and argues these observations are not substantial evidence to support that finding.  Bleski points out the ALJ noted he was seated without a change in position for forty-five minutes, but the hearing lasted only forty minutes.  Bleski also argues that the ALJ assumed the role of the vocational expert by altering job demands in order to accommodate Bleski's RFC.  Based upon the foregoing, Bleski asserts that the court should exercise its discretion to reverse for payment of benefits without remanding for hearing because (a) the ALJ failed to provide sufficient reasons for rejecting evidence that should now be taken as true; (b) there are no outstanding issues that must be resolved before a determination of disability can be made; and (c) it is clear from the record that the ALJ would be required to find the claimant disabled when the improperly rejected evidence is credited.  Finally, Bleski objects to the Clerk of Court's Notice of Docket Correction (Dkt. #10) which divided the government's Opposition and Counter-Motion into two separate docket entries, because the court's briefing order stated that a cross-motion to affirm would be considered an opposition.

**4.      The Commissioner's Reply.**

The Commissioner replies that the Administrative Record reflects that Dr. Sohn is indeed a medical doctor.  The Disability Determination and Transmittal clarifies that the medical consultant who completed the 2007 Physical RFC Assessment (A.R. 648) was Myung Sohn, M.D.  (A.R. 71).  Both forms indicate that Dr. Sohn's specialty is internal medicine. Accordingly, Dr. Sohn is an acceptable medical source as well as an expert in social security determinations.

**5.      Plaintiff's Request for Oral Argument and Commissioner's Reply.**

Counsel for Plaintiff states he had a good faith belief that Dr. Sohn was not a doctor.  In any event,  Plaintiff argues, Dr. Sohn's status has no bearing on Plaintiff's argument that the requirement of substantial evidence does not allow the ALJ to substitute one check-the-box form in place of another.  In response, the Commissioner states that the 2007 RFC was conducted by Dr. Sohn alone.

**IV.    Analysis and Findings**

Reviewing the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion, the court finds the ALJ's decision is supported by substantial evidence, and the ALJ did not commit legal error.

**A.      The ALJ Satisfied Her Duty to Develop the Record.**

It is well-established an ALJ has "a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) (*citing Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)).  Because the claimant bears the burden of proving disability, the ALJ's duty to further develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Tonapetyan*, 242 F.3d at 1150.  Bleski has not stated what additional inquiry the ALJ should have made in order to more fully develop the record.  Instead, he argues that the decision references the record in a misleading and incomplete way.  The court disagrees for the reasons discussed more fully below and finds that the ALJ did not fail in her duty to fully develop the record.

**B.      The ALJ's Rejection of Dr. Kroop's Controverted Opinion Was Not Error.**

Bleski argues that the ALJ did not properly weigh the opinion of Dr. Kroop, his treating physician.  The implementing regulations for Title II of the Social Security Act distinguish among the opinions of three types of physicians: first, treating physicians; second, examining physicians (*i.e.* physicians who examine but do not treat a claimant); and third, non-examining or reviewing physicians (*i.e.* physicians who neither examine nor treat the claimant, but review the claimant's file).  *Lester v. Chater*, 81 F.3d, 821, 830 (9th Circuit 1995); 20 C.F.R. § 404.1527(d).  Generally, a treating physician's opinion is entitled to more weight than an examining physician's, and an examining physician's opinion is entitled to more weight than a reviewing physician's.  *Lester*, 81 F.3d at 830; 20 C.F.R. § 404.1527(d).  The social security regulations give more weight to opinions that are explained than those that are not.  20 C.F.R. § 404.1527(d)(3).  The Social Security Regulations also give more weight to opinions of specialists concerning matters relating to their specialty over that of non-specialists.  20 C.F.R. § 404.1527(d)(5).

In disability benefits cases, physicians typically provide medical opinions that address the nature and extent of the claimant's limitations, and opinions concerning "the ultimate issue of disability," *i.e.* opinions about whether a patient is capable of any work given his limitations.  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).  "Under the regulations, if a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial

evidence in the record, the treating physician's opinion is given controlling weight." *Id.* (*citing* 20 C.F.R. § 404.1527(d)(2) and Social Security Ruling 96-2p). However, an ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1993); *Batson*, 359 F.3d at 1195 (ALJ properly rejected opinions of treating physician that lacked substantive medical findings to support her conclusion" and were "unsupported by the record as a whole").

Here, the ALJ gave Dr. Kroop's opinion "little weight" concerning his opinion of Plaintiff's mental health because it lacked foundation, and Dr. Kroop's progress notes did not include mental status evaluations, referrals to mental health professionals, or a description of claimant's symptoms. Instead, his opinion "sporadically references 'depression' or 'anxiety' and prescriptions for various pharmaceuticals." (A.R. 16). As a result, the ALJ found that Dr. Kroop's opinion concerning Plaintiff's mental health lacked medically sufficient diagnostic bases for the serious limitations asserted. Furthermore, with regard to Plaintiff's heart disease and hypertension, Dr. Kroop's records do not indicate symptoms, observations, or prescriptions for this condition. (A.R. 15).

With regard to his opinion in general, although he indicated a fourteen-year treating relationship with Plaintiff, the ALJ found his progress notes to be cursory, and the symptoms indicated in his opinion never appear once in several years of progress notes. The ALJ also noted Dr. Kroop provided diagnoses such as sleep apnea and never stated any clinical signs or diagnostic techniques used to reach this diagnosis. Bleski points out that the Administrative Record establishes that a sleep study was performed according to a note in Dr. O'Neill's records and that a CPAP machine was prescribed. However, Bleski said he could not use the machine. Nevertheless, the ALJ correctly concluded that Dr. Kroop's records lacked diagnostic findings and support, and Bleski did not use the only prescription he received to treat sleep apnea. Additionally, Dr. O'Neill's records reflect that Bleski "self discontinued" his blood pressure medication. Dr. O'Neill also concluded that Bleski suffered "a certain amount of self-inflicted stress which appears to be fostered by attitude." (A.R. 429). Finally, Dr. O'Neill concluded that although Bleski suffered from hypertension with early evidence of hypertensive heart disease, there were no periods of disability from an internal medicine standpoint. (A.R. 430).

/ / /

1    The ALJ found Dr. Kroop's opinion concerning Bleski's physical and mental limitations and

2 inability to work was inconsistent with the bulk of the evidence in the record.  The court finds the ALJ

3 did not commit error by giving Dr. Kroop's opinion little weight.  She provided clear and convincing

4 reasons, supported by the record as a whole, to reject the doctor's opinion.  Furthermore, the ALJ relied

5 on Plaintiff's other treating physicians' opinions and evaluations of Drs. Greenfield and Greenspan and

6 others in connection with Bleski's workers compensation claim in determining Plaintiff's RFC.

7    **C.    The ALJ Did Not Err in Making a Credibility Determination.**

8    The Ninth Circuit has consistently held that "questions of credibility and resolution of conflicts

9 in the testimony are functions solely of the Secretary."  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.

10 1982); *see also Allen v. Heckler*, 749 F.2d 577, 580 n.1 (9th Cir. 1985).  "The ALJ is responsible for

11 determining credibility and resolving conflicts in medical testimony."  *Magallenes,* 881 F.2d at 750.

12 However, the ALJ's credibility findings must be supported by specific, cogent reasons.  *See Rahad v.*

13 *Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990); *see also Yuckert v. Bowen*, 841 F.2d 303, 307 (9th Cir.

14 1988).  General findings are insufficient; rather, the ALJ must identify what testimony is not credible

15 and what evidence undermines the claimant's complaints.  *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.

16 1995); *see also Dodrill v. Shalala*, 12 F.2d 915, 918 (9th Cir. 1993).  Unless there is affirmative

17 evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the

18 claimant's testimony must be clear and convincing.  *See Lester,* 81 F.3d at 834.  In weighing a

19 claimant's credibility, an ALJ may consider his reputation for truthfulness, inconsistencies between his

20 testimony and his conduct, his daily activities, his work record, and testimony from physicians and third

21 parties concerning the nature, severity, and effect of the symptoms of which he complains.  *See Smolen*,

22 80 F.3d at 1284 (citations omitted).  Furthermore, an ALJ's personal observation of a claimant at a

23 hearing may be considered in the overall evaluation of credibility.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th

24 Cir. 2007); SSR 96-7p.

25    The court finds the ALJ gave clear and convincing reasons for discrediting Bleski's statements

26 concerning the degree of his impairments and limitations.  She specifically identified which testimony

27 she discredited and stated the evidence she relied upon in making that determination.  For example, the

28 ALJ noted that the pain and limitation that Plaintiff alleged regarding his hands was inconsistent with his

decision not to undergo surgery for his carpal tunnel.  Although Plaintiff explained that he had elected not to undergo surgery because his knee surgery had been unsuccessful, and he needed his hands to support his knee when he walked with his cane, where evidence supports either confirming or reversing the ALJ's decision, the court may not substitute its judgment for that of the ALJ's.  *See Batson*, 359 F.2d at 1196.  Nevertheless she found that his bilateral carpal tunnel syndrome significantly limits his ability to perform work-related activities and was severe within the meaning of the regulations.

The ALJ  noted there were inconsistencies between claims of disability made to the state agency by Bleski and a report prepared by Richard Shields, a long-time friend of Bleski's.  Specifically, in written reports to the state agency Bleski claimed his impairments prevented him from lifting bending, stooping, kneeling and standing for long periods of time; performing household chores; and that he only left the house to shop for food.  His friend of 15 years stated Bleski left the house to spend time with others and see movies and go out to eat.

The ALJ also found that Bleski's claim that he was unable to stand or walk for prolonged periods was not credible because it is inconsistent with Dr. Orlando's observation that Bleski was "asymptomatic when walking on flat surfaces."  (A.R. 662).  The ALJ also noted that despite Bleski's claim that he could only remain seated for twenty minutes at a time, he sat for forty-five minutes during the administrative hearing.  Bleski notes that according to the hearing transcript, the hearing only lasted forty minutes.  Presumably, the participants arrived and were seated before the hearing formally began.  However, whether the hearing was forty or forty-five minutes, the ALJ's observation that Bleski remained seated at least twice the time that he said he could remains the same.

Furthermore, Bleski testified he avoided household chores, relied on others, and had difficulty socializing.  However, his examining psychiatrist, Dr. Ritvo, reported in July 2007 after a consultative psychiatric exam that Bleski was able to care for his basic needs, able to drive and go out alone, and had fair relationships with family and friends.  (A.R. 16, 617-21).  In short, the record as a whole supports the ALJ's credibility determination that Bleski was not as limited as he claimed.

**D.     The ALJ Properly Evaluated the Medical Evidence in Determining Bleski's RFC.**

Bleski argues that the decision does not reflect that his non-severe impairments were considered in combination with his severe impairments in determining his RFC, and this error requires reversal.

1  The Commissioner maintains that although the ALJ discussed each alleged impairment separately at step

2  two, she considered the functional effect of all of Plaintiff's impairments–severe and non-severe–in her

3  RFC determination.  The ALJ determined Plaintiff was limited to light work with numerous additional

4  limitations, and the Commission contends Plaintiff has not shown his non-severe limitations would limit

5  him any further.

6       Here, the ALJ concluded that Plaintiff had the RFC to perform light work with the following

7  limitations: he could only occasionally perform activities at or above shoulder height; he could not

8  perform activities that require forceful gripping, grasping, turning, or torquing with the bilateral upper

9  extremities; he could only frequently perform fine manipulations; he must avoid hazards; he must avoid

10  prolonged weight-bearing activities; and he was limited to standing and walking a total of four hours in

11  an eight-hour workday.  (A.R. 17).  She explained that she rejected the opinion of examining physician

12  James Paule, M.D., that Bleski had considerably more residual functional capacity than she found.  The

13  ALJ also rejected the opinion of Dr. Sohn, a non-examining physician, who concluded Bleski had

14  considerably less residual functional capacity.  The ALJ made her own findings of residual functional

15  capacity between these two opinions, finding Bleski had less than Dr. Paule found, and more than Dr.

16  Sohn found.

17       The ALJ states that in making this finding, she "considered all symptoms and the extent to which

18  these symptoms can reasonably be accepted as consistent with the objective medical evidence and other

19  evidence. . . as well as opinion evidence in accordance with the requirements of 20 CFR 404.1527 and

20  SSRs 96-2p, 96-5p, 96-6p, and 06-3p." (A.R. 17-18).   For example, she found the record as a whole did

21  not support Dr Paule's conclusion that Bleski could lift and carry up to fifty pounds occasionally, or Dr

22  Sohn's conclusion  that he could stand or walk for six hours in an eight-hour day.  Instead, she gave

23  considerable weight to the opinions of Drs. Greenfield and Greenspan.   Dr. Greenfield performed an

24  evaluation of Bleski in connection with Bleski's workers compensation claim, reviewed Bleski's

25  extensive medical record and wrote an opinion on July 13, 2006, about Bleski's limitations, which the

26  ALJ found more consistent with her own findings and supported by the record.   She also found the

27  opinions of Plaintiff's treating orthopedic surgeon, Dr. Greenspan, more consistent with her own

28  findings and supported by the record.  Dr. Greenspan also conducted an extensive review of Plaintiff's

1    medical record and wrote a report in June 2008 which restated his conclusions concerning Bleski's work

2    restrictions that he provided in July 2005. The ALJ considered both Bleski's severe and non-severe

3    impairments in making her RFC evaluation.

4         **E.    The ALJ Properly Determined Bleski Could Return to His Past Employment as He**

5         **Performed It.**

6         Bleski asserts the ALJ's decision should have contained a function-by-function analysis of

7    Plaintiff's past work.  The Commissioner asserts that no such analysis is required because the ALJ

8    reasonably relied on Bleski's own testimony that he performed his previous job as an addressing

9    machine operator seated, and he did not have to lift more than ten pounds.  A claimant's own testimony

10   about his previous job requirements is highly probative. *See Matthews*, 10 F.3d at 861.

11        Furthermore, the ALJ relied upon the vocational expert's testimony that an individual with

12   Bleski's age, education, work experience and RFC could perform the functional demands and job duties

13   of Bleski's past relevant work as an addressing machine operator as Bleski had actually performed it.

14   (A.R. 63).  In fact, the vocational expert noted that with regard to Plaintiff's limitations of his hands,

15   "these jobs would entail more simple handling type function."  (A.R. 63).  The vocational expert initially

16   testified that Bleski could not perform his past relevant work based on the first hypothetical the ALJ

17   posed because he needed to avoid hazards.  However, after further questioning and considering the job

18   of addressing machine operator, the vocational expert concluded there were no hazards present in

19   Plaintiff's past employment as he performed it that would preclude him from performing it again.  Based

20   on the Plaintiff's own testimony and the hypotheticals posed to the vocational expert, which included the

21   limitations the ALJ found were supported by the record, the ALJ concluded Plaintiff could perform his

22   past relevant work as an addressing machine operator.

23   **V.    Conclusion**

24        Judicial review of a decision to deny disability benefits is limited to determining whether the

25   decision is based on substantial evidence reviewing the administrative record as a whole.  If the record

26   will support more than one rational interpretation, the court must defer to the Commissioner's

27   interpretation.  If the evidence can reasonably support either affirming or reversing the ALJ's decision,

28   the court may not substitute its judgment for the ALJ's. *Flaten*, 44 F.3d at 1457.  It is the ALJ's

1  responsibility to make findings of fact, drawing reasonable inferences from the record as a whole and to

2  resolve conflicts in the evidence and differences of opinion.

3        There are many conflicts in the evidence and many differences in the medical opinions expressed

4  by Bleski's treating, examining, consulting, and evaluating physicians.  Bleski argues he suffers from

5  multiple severe physical and emotional impairments which prevent him from engaging in any

6  employment.  However, at least two of his treating physicians have concluded he could return to work.

7  On February 9, 2006, Dr. Conwiser released Bleski to return to work on March 9, 2006.  Bleski testified

8  at the hearing that he was fired because Disney "wouldn't employ me because of my restrictions." (A.R.

9  44).  A disability report to the state agency states Bleski stopped working because he brought modified

10  work restrictions to his employer who said "the qualified examiner's work restrictions trumped his

11  treating." (A.R. 133). His examining physician, Dr. Sampson, released Bleski to return to work in

12  December 2006, although Dr. Sampson also found Bleski was a qualified injured worker for worker's

13  compensation purposes.  (A.R. 802).  On January 17, 2008, Dr. Orlando, Plaintiff's treating orthopedic

14  surgeon,  opined Bleski could return to work without restrictions.  (A.R. 783).  Bleski has now been

15  rated for worker's compensation purposes and clearly suffers from a variety of serious medical

16  problems.  However, having reviewed the Administrative Record as a whole, and weighing the evidence

17  that supports and detracts from the Commissioner's conclusion, the court finds that the ALJ's decision is

18  supported by substantial evidence under 42 U.S.C. § 405(g), and that the ALJ applied the correct legal

19  standard in reaching her decision.

20        For all of the foregoing reasons,

21        **IT IS ORDERED** that Plaintiff's Request for Oral Argument (Dkt. #14) is DENIED.

22        **IT IS RECOMMENDED** that Plaintiff's Motion for Remand (Dkt. #9) be DENIED and the

23  Commissioner's Cross-Motion for Summary Judgment (Dkt. #10) be GRANTED.

24        Dated this 19th day of July, 2011.

25

26                                    _____
                                 PEGGY A. LEEN

27                                   UNITED STATES MAGISTRATE JUDGE

28